IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ADAM PEGUES, # R-50721, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 16-cv-1235-SMY |
| A. STEBER, | ) | |
| JANA CARIE, | ) | |
| CHAD RAY, | ) | |
| C/O SIMPSON, | ) | |
| C/O KIDD, | ) | |
| C/O ADAMSON, | ) | |
| C/O KAMP, | ) | |
| C/O CLARY, | ) | |
| C/O OCHS, | ) | |
| C/O BRANT, | ) | |
| C/O LAMPLEY, | ) | |
| C/O TRIBBLE, | ) | |
| and ELDON L. COOPER, | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Adam Pegues, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that he was subjected to excessive force, denied medical attention and that his due process rights were violated in a disciplinary hearing. He also raises a battery claim under state law. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

1

granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On March 30, 2016, Plaintiff, who uses a wheelchair to mobilize due to a disabling spine condition, was called to the health care unit to see Dr. Coe.[1] (Doc. 1, p. 11). The doctor ordered Plaintiff to get out of his wheelchair, but Plaintiff protested that he is unable to walk or stand because of a deteriorating disc in his spine. Dr. Coe stated that he was taking away Plaintiff's wheelchair, and ordered Lt. Ray to make Plaintiff get out of the chair. Plaintiff again said that he was unable to do so. Dr. Coe then ordered Lt. Ray to take Plaintiff to segregation if he did not get out of the wheelchair and walk "as of right now." *Id.* Plaintiff believes Dr. Coe acted in this way because Plaintiff has pending lawsuits against him.

Lt. Ray took Plaintiff to the segregation unit where he "was thrown out of his wheel chair and into the shower." (Doc. 1, p. 12). Lt. Steber ordered Plaintiff to stand up and walk to the shower door so he could be searched and handcuffed. Plaintiff responded that he could not walk or stand, and needed the wheelchair in order to move to the door. C/O Simpson and C/O Kidd picked Plaintiff up. Steber twisted Plaintiff's arm and wrist to remove his restraints, and Plaintiff was returned to a sitting position on the shower floor. Plaintiff asked Adamson and Kidd for help to undress because of his inability to walk or stand, but they ignored him.

Steber summoned the tactical team (consisting of Officers Kamp, Clary, Ochs, Brant, Lampley and Tribble). They sprayed Plaintiff with pepper spray after he told them that he could not walk or stand. He remained in a sitting position on the floor with his hands in the air. (Doc. 1, p. 13). The tactical team officers then "jumped on" Plaintiff, twisting, pulling, and turning his body, causing him to scream in pain. *Id.* They also choked him while he lay face down on the floor.

---

[1] Dr. Coe is not named as a Defendant in the Complaint and Plaintiff does not assert any claims against him. Plaintiff provided a copy of his medical permit for a wheelchair, issued November 5, 2015. (Doc. 1-1, p. 2).

Plaintiff was then taken to a segregation cell, where he was left lying on the floor with pepper spray chemicals still on his body and in his hair. He asked for medical attention and help to clean off the chemicals from Clary, Brant, Ochs, Lampley, Tribble, Kamp, Simpson, Adamson and Kidd, but they ignored his requests. (Doc. 1, p. 13). During Plaintiff's time in segregation, he was unable to use the shower, attend yard or go to family visits because Simpson, Adamson and Kidd refused to give him his wheelchair.

As a result of a disciplinary ticket issued against Plaintiff for the events of March 30, 2016, he was punished with 3 months segregation and 3 months C-grade. (Doc. 1, p. 14). He claims that the real reason he was punished was because of his disability and due to retaliation by Cooper and Carie, who conducted the disciplinary hearing. Cooper and Carie denied Plaintiff the right to participate in the hearing and give a statement, because they refused to give him his wheelchair so he could attend. Cooper and Carie found Plaintiff guilty of the charge without him being present.

Plaintiff seeks compensatory and punitive damages and an injunction ordering the Defendants not to retaliate against him. (Doc. 1, p. 15).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim against Ray, Steber, Simpson, Kidd, Kamp, Clary, Ochs, Brant, Lampley, and Tribble, for using excessive force while

removing Plaintiff from his wheelchair, removing his restraints, spraying him with pepper spray, and battering and choking him on March 30, 2016; (Adamson just refused to help PL undress)

**Count 2:** State tort battery claim against Ray, Steber, Simpson, Kidd, Kamp, Clary, Ochs, Brant, Lampley, and Tribble, for removing Plaintiff from his wheelchair, removing his restraints, spraying him with pepper spray, and battering and choking him on March 30, 2016;

**Count 3:** Eighth Amendment claim against Clary, Brant, Ochs, Lampley, Tribble, Kamp, Simpson, Adamson, and Kidd, for refusing to summon medical attention for Plaintiff after he was battered, and refusing to help him clean off the pepper spray chemicals;

**Count 4:** Eighth Amendment claim against Simpson, Adamson, and Kidd for withholding Plaintiff's wheelchair, preventing him from showering, attending yard, and participating in family visits;

**Count 5:** Due process claims against Cooper and Carie for preventing Plaintiff from attending and giving a statement at his disciplinary committee hearing, finding him guilty in his absence, and punishing him with 3 months segregation.

Counts 1, 2, 3, and 5 shall receive further review. Count 4 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 1 – Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de

minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Plaintiff asserts an Eighth Amendment claim based on the following actions occurring on March 30, 2016: Ray, or somebody under his direction, threw Plaintiff out of his wheelchair onto the floor of the segregation shower; Simpson and Kidd picked Plaintiff up and held him while Steber painfully twisted Plaintiff's arm and wrist to remove his restraints; at Steber's direction, tactical team officers Kamp, Clary, Ochs, Brant, Lampley and Tribble sprayed Plaintiff with pepper spray while he was sitting on the floor; and while he was on the floor, Kamp, Clary, Ochs, Brant, Lampley and Tribble jumped on him, twisted, pulled and turned his body, and choked him. During all these events, Plaintiff claims that he was not resisting officers in any way, but told them that he was unable to comply with their orders to undergo a search because he could not walk or stand on his own.

At this early stage of the case, Plaintiff has stated a viable claim for excessive force against Ray, Steber, Simpson, Kidd, Kamp, Clary, Ochs, Brant, Lampley and Tribble. Thus, **Count 1** shall proceed for further consideration.

### Count 2 – State Law Claim for Battery

Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'" *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 ILL. COMP. STAT. 5/12–3(a)).

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the

original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Here, Plaintiff's battery claim is based on the identical facts discussed above in Count 1 which gave rise to his Eighth Amendment claim for excessive force. As such, the Court has supplemental jurisdiction to consider the battery claim. The state law battery claim in **Count 2** shall also proceed against Ray, Steber, Simpson, Kidd, Kamp, Clary, Ochs, Brant, Lampley and Tribble.

### Count 3 – Deliberate Indifference to a Serious Medical Need

A guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Under this authority, the defendants who allegedly inflicted excessive force on Plaintiff as described in Count 1 (Ray, Steber, Simpson, Kidd, Kamp, Clary, Ochs, Brant, Lampley and Tribble) and then prevented Plaintiff from getting immediate medical attention for his injuries, may be found liable for deliberate indifference to his need for medical care. Additionally, after the assault, Plaintiff specifically asked Adamson, Clary, Brant, Ochs, Lampley, Tribble, Kamp, Simpson and Kidd to help him get medical attention and/or to help him clean the pepper spray residue off his body, but these Defendants failed to assist him in any way.

At this juncture, it cannot be determined whether the actions of Clary, Brant, Ochs, Lampley, Tribble, Kamp, Simpson, Adamson, Kidd, Ray and Steber resulted in Plaintiff being denied medical care or otherwise constituted deliberate indifference to Plaintiff's serious medical needs. Therefore, Plaintiff's claim in **Count 3** against these defendants may proceed for further review.

**Dismissal of Count 4 – Unconstitutional Conditions of Confinement**

Plaintiff claims that because Simpson, Adamson and Kidd refused to give him his wheelchair after he was moved to a segregation cell, he was unable to use the shower, attend yard or go to the visiting area to see family. Also, his wheelchair was in front of his cell, which was "not an ADA cell." (Doc. 1, p. 14). He asserts that these deprivations violated his Eighth Amendment right to be free from cruel and unusual punishment.[2]

The Eighth Amendment prohibition against cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eight Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987). The subjective requirement focuses on a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

---

[2] Plaintiff does not articulate any claim under the Americans with Disabilities Act or the Rehabilitation Act in the instant Complaint, therefore, the Court shall not evaluate whether any violation of either Act may have occurred.

A temporary deprivation of a prisoner's access to family visits does not implicate Eighth Amendment concerns. *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (prison disciplinary policy that restricted visitation for a limited period did not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur."). Therefore, Plaintiff may not maintain an Eighth Amendment claim on that basis.

Turning to the deprivation of showers and yard time, these matters may or may not rise to the level of objective seriousness that would trigger Eighth Amendment scrutiny. There is no clear standard as to the minimum frequency of showers an inmate must be allowed in a particular period of time. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (one shower per week for inmates in segregation is constitutionally sufficient). *See also Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986) (mere discomfort and inconvenience do not implicate the Constitution).

The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986). *See also Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001) (collecting cases) (exercise is "a necessary requirement for physical and mental well-being," but a short term denial of exercise does not violate the Constitution).

In Plaintiff's case, the Complaint does not indicate the length of time that Plaintiff was unable to shower or attend yard, nor does it describe whether he suffered any physical effects as a result of those restrictions. As such, the minimal facts pled do not show that Plaintiff

experienced a serious deprivation that created an excessive risk to his health, as a result of his inability to access the shower and yard time. **Count 4**, therefore, fails to state an Eighth Amendment claim upon which relief may be granted against Simpson, Adamson or Kidd. This claim shall be dismissed at this time without prejudice.

**Count 5 – Deprivation of a Liberty Interest without Due Process**

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). The Supreme Court has stated that in order to satisfy due process concerns, an inmate must be given advance written notice of the charge before he is called to the disciplinary hearing, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision to impose discipline must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff was found guilty of disobeying a direct order and punished with 3 months in segregation based on the hearing conducted by Carie and Cooper. (Doc. 1-1, p. 4). The basis for the disciplinary charge was that Plaintiff was given 3 orders to come to the chuckhole and cuff up and 3 orders to comply with a strip search, both of which he refused to do. *Id.* However, Plaintiff alleges in his Complaint that he could not comply with officers' orders because he was unable to stand and walk on his own and needed help in order to remove his clothing. While the hearing report prepared by Carie and Cooper states that Plaintiff "refused to appear" before the committee, Plaintiff asserts that he was unable to attend the hearing because Cooper and Carie refused to provide him access to his wheelchair. There appears to be no dispute that Cooper and

10

Carie found Plaintiff guilty in his absence. Based on Plaintiff's account, he may have been deprived of the right to appear before the hearing panel to present a statement in his defense, which is a basic due process guarantee under *Wolff*.

That factor alone, however, does not support a viable claim for deprivation of a liberty interest without due process. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

Two elements must be considered to determine whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions.

*See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

Plaintiff spent 3 months (90 days) in disciplinary segregation. This period of time may be long enough to trigger an inquiry into the conditions of his confinement. In reference to those conditions, Plaintiff asserts that for at least part of his time in segregation he was unable to use his wheelchair to get around, and as a result, was deprived of access to the shower and yard which he would otherwise have had even in segregation. Further factual development will be necessary in order to determine whether these conditions constituted an "atypical and significant hardship" that would demonstrate a violation of a liberty interest without due process. Accordingly, the due process claim against Cooper and Carie in **Count 5** shall proceed for further review.

## Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

## Disposition

**COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **STEBER, CARIE, RAY, SIMPSON, KIDD, ADAMSON, KAMP, CLARY, OCHS, BRANT, LAMPLEY, TRIBBLE** and **COOPER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of

Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to*

*such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 13, 2017**

> s/ STACI M. YANDLE
> United States District Judge